Rebecca Rettig (*pro hac vice pending*)
**FISHERBROYLES, LLP**
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (646) 522-9975
Email: rebecca.rettig@fisherbroyles.com

Daniel Harshman  (CA Bar No. 177139)
**FISHERBROYLES, LLP**
2110 Artesia Blvd. #606
Redondo Beach, CA  90278
Telephone:  (310) 400-5668
Email: daniel.harshman@fisherbroyles.com

*Attorneys for Plaintiff Compound Labs, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCSICO DIVISION

| | |
|---|---|
| COMPOUND LABS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALEX MACK, INC.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>**[1] FALSE DESIGNATION OF ORIGIN [15 U.S.C. §1125(a)]**<br><br>**[2] ANTICYBER-SQUATTING [15 U.S.C. §1125(d)]**<br><br>**[3] COMMON LAW UNFAIR COMPETITION**<br><br>**[4] COMMON LAW TRADEMARK INFRINGEMENT**<br><br>**[5] VIOLATION OF CALIF. BUS. & PROF. CODE**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Compound Labs, Inc. ("Compound"), for its Complaint against Defendant Alex Mack, Inc. ("Alex Mack"), alleges as follows:

//

# INTRODUCTION

1. The term "FinTech"—used to refer to "financial technology"—has gained traction in the common vernacular over the last decade. FinTech encompasses innovations that build on the digitization of financial services and processes and, with each technological evolution, presents new opportunities to enhance everyday societal experiences. Most recently, FinTech innovation has exploded, bringing technology to almost every aspect, institution and instrument of the traditional financial world. Digital money now flows nearly instantaneously—through, among other things, software applications in the form of fiat currencies, such as the United States dollar, or through blockchain networks in the form of cryptographic assets ("cryptoassets"), such as bitcoin.

2. Both Compound and Alex Mack seek to expand the use of digital money through FinTech innovation. Compound has developed computer software (the "Protocol") that allows users to deposit, pool, withdraw and transfer certain cryptoassets and earn interest on the pooled cryptoassets. Compound also has developed software that helps users access the Protocol (the "Compound UI"). During the development and deployment of this software, Compound began using the term "Compound" in commerce and thus, gained common law trademark rights in that word as it relates to software, software applications and financial services (the "Compound Mark").

3. Alex Mack has developed a software application (the "Alex Mack App") that also facilitates depositing, pooling, withdrawing, and transferring money through a shared electronic platform. In addition, the Alex Mack App allows users to spend the pooled money through a Mastercard-backed debit card (the "Alex Mack Debit Card" and together with the Alex Mack App, the "Alex Mack Products"). Alex Mack chose to brand the Alex Mack Products with the term "Compound" *after* Compound began use of the Compound Mark—and even filed a federal trademark application for that term (now withdrawn with prejudice). Although Alex Mack's use of such term infringes Compound's superior rights in the Compound Mark, Alex Mack intends to continue its use of the Compound Mark. Alex Mack's use of the term "Compound" is likely to confuse users regarding the source, sponsorship or affiliation of the Alex Mack Products: users will believe that *Compound* is the sponsor or otherwise is associated with Alex Mack or the Alex Mack Products, when there is no association, affiliation, or

relationship between them.

4. This action does not pose the question of whether these technologies—the Protocol and the Compound UI, on the one hand, and the Alex Mack Products, on the other hand—are independent innovations. They unquestionably are and, as technologies, can coexist. However, to do so, they must use their own distinct nomenclature.

5. Innovators and entrepreneurs devote substantial time and resources to bringing their own unique ideas to market—and want to distinguish their works with their own names and distinctive mark. None should leverage another's good name—or be rewarded for doing so.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over Compound's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Compound's claims arising under state statutory and common law pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Alex Mack because it is present in this District, maintains its principal place of business here, and, upon information and belief, conducts substantial business within this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Alex Mack resides in this District, and because a substantial portion of the events giving rise to Compound's claims set forth herein occurred in this District.

## INTRADISTRICT ASSIGNMENT

9. This action is properly assigned to the San Francisco Division as a substantial portion of the events giving rise to the claims set forth arose occurred in the San Francisco Division. This, however, is an Intellectual Property Action which may be assigned on a District-wide basis pursuant to Local Rule 3-2(c).

## PARTIES

10. Plaintiff Compound Labs, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

//

11. Defendant Alex Mack, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

## GENERAL ALLEGATIONS

### Compound and the Compound Mark

12. In 2017, Robert Leshner and Geoffrey Hayes founded Compound—their third technology startup together—in order to research and resolve certain identified deficiencies in "blockchain financial markets."

13. Leveraging their respective backgrounds in finance and technology, Leshner, Hayes and the Compound team determined that a serious flaw beset the market for cryptoassets: most cryptoassets sit idle in digital wallets, whereas traditional assets generate interest while stored in financial institutions.

14. To rectify that flaw, Leshner, Hayes and other members of the Compound team began developing an open source software protocol on the Ethereum blockchain ("Ethereum") that algorithmically establishes interest rates on pools of certain cryptoassets, with such interest rates based upon the supply and demand for such cryptoassets. Users can deposit, pool, withdraw and transfer certain cryptoassets to and from the Protocol.

15. Also in 2017, Compound registered the domain name <compound.finance> (the "Compound Domain").

16. In January 2018, Leshner introduced the Protocol—in connection with the name "Compound"—in an online blog post on Medium, and informed readers that Compound was in the process of developing the Protocol.

17. In April 2018, Compound commenced official use of the Compound Mark in relation to the Protocol, including on the Compound Domain.

18. In September 2018, Compound deployed the Protocol to the Ethereum mainnet. At that time, Compound began using the Compound Domain to offer information about the Protocol and to allow access to other software application services—namely, the Compound UI.

19. Immediately thereafter, the mainstream media (as well as others) began publicizing the Protocol with reference to the Compound Mark. For example, the *Wall Street Journal* and *Bloomberg*

wrote features about the Protocol in or around May 2018; a November 2018 *Fortune* article highlighted Compound and the Protocol; *Forbes* covered Compound and the Protocol in April 2019; and the *Wall Street Journal* again included Compound in an article in June 2019. Compound and/or the Protocol have been the subject of or mentioned in countless articles since in or around April 2018.

20. Compound's renown has grown substantially—and quickly. At any one time, users deposited more than $150,000,000 worth of cryptoassets in the Protocol. As of today's date, more than 18,000 Ethereum public addresses are using the Protocol. As of the same date, according to SemRush Inc.—a search engine optimization research company—the word "compound" was searched approximately 90,500 times in a month and during that period, the Compound Domain ranked *second* on the Google search engine for that term.

21. Compound's prominence was borne, at least in part, from its efforts in relation to the Compound Mark. Compound has written 24 comprehensive newsletters since July 22, 2019, contributed to 43 separate threads on Reddit, acquired over 17,000 Twitter followers, and has tweeted hundreds of times. Compound, the Protocol and the Compound UI have been mentioned in thousands of tweets. Compound's prominence further was borne from the Compound team's time, resources, and effort to ensure that the Protocol and the Compound UI function safely and securely, and in the most innovative and efficient manner.

### Alex Mack's Infringing Conduct

22. In or around December 2018, Amanda Peyton founded Alex Mack. Peyton is a self-described "technology entrepreneur and enthusiast" and, on information and belief, previously formed two technology companies. On information and belief, Todd Berman assisted Peyton in founding Alex Mack.

23. Currently, Alex Mack offers the Alex Mack App, which permits groups of users to pool funds that the group members can then access. Alex Mack App's users can take the same actions with respect to their funds as users of the Protocol with respect to their cryptoassets—specifically, both sets of users can deposit, withdraw, pool and transfer funds. In addition, groups on the Alex Mack App can obtain the Alex Mack Debit Card to spend the group's pooled funds as they desire.

24. Although Compound had already been using the Compound Mark in commerce prior to Alex Mack's launch of its services, Peyton, through Alex Mack, chose to brand the Alex Mack Products with the term "Compound."

25. In or around February 2019, Alex Mack acquired the domain <compound.co> (the "Infringing Domain") to offer information online about Alex Mack's "Compound" branded software, software application and financial services.

26. In or around November 2019, Alex Mack launched the Infringing Domain to market the Alex Mack Products under the name "Compound," and began to use the Compound Mark in commerce in the United States. At this time, Alex Mack was aware of Compound's superior rights in the Compound Mark (including through an opposition proceeding before the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB")). Thus, Alex Mack's deploying the Infringing Domain constitutes knowing and willful infringement of the Compound Mark.

27. Even though Alex Mack implicitly recognized Compound's superior rights in the Compound Mark by withdrawing its trademark application for "Compound" after the TTAB proceeding was commenced, Alex Mack continues to use the term "Compound" not only through the Infringing Domain, but also to brand the Alex Mack Products—with no intention to cease such use of the mark. Further, Alex Mack is using the Compound Mark for recruiting purposes, using only the name of the Alex Mack Products (*i.e.*, "Compound") in seeking to hire new employees—in particular, software developers. Given the recent launch of the Alex Mack Products, it appears that Alex Mack will continue to expand its infringing use of the Compound Mark for its services.

### Likelihood of Confusion

28. Alex Mack's use of "Compound" for the Alex Mack Products is likely to cause the consuming public to be confused or mistaken as to whether Alex Mack or the Alex Mack Products are affiliated, connected, or associated with, or sponsored, authorized, approved or licensed by, Compound, the Protocol, or the Compound UI.

29. None of Alex Mack or the Alex Mack Products are affiliated, connected, or associated with, or sponsored, authorized, approved or licensed by, Compound.

30. The Alex Mack Products, the Protocol, and the Compound UI are available through the same or similar channels of trade—namely, through the Internet and software applications.

31. Both Alex Mack and Compound use their respective websites accessed through their respective <compound> domain names to reach consumers. Consumers using a search engine to search for "Compound" will find both the Compound Domain and the Infringing Domain.

32. Peyton and Berman seek to market the Alex Mack Products only with the Compound Mark. The Infringing Domain uses the term "Compound" or "Compound Card" multiple times. The same is true for the app stores where the Alex Mack App is available for download: it is branded as "Compound" and the very brief description of the Alex Mack App uses the term "Compound" more than ten times.

33. Rather than associating themselves with Alex Mack, Peyton identifies herself on her LinkedIn profile as "Co-Founder at Compound" (with a location of San Francisco) and Berman identifies himself on LinkedIn as "CTO / Founder at Compound" (also with a location of San Francisco). Notably, Leshner's LinkedIn profile states that he is "Founder – Compound," and provides San Francisco as his location, and Hayes' LinkedIn profile states that he is "CTO and Founder – Compound," also in San Francisco.

34. In addition to confusing Compound users with its unauthorized use of the Compound Mark for Alex Mack Products, Alex Mack also continues to misappropriate Compound's reputation and goodwill to recruit prospective employees. For example, as of the time this Complaint was filed, Alex Mack recruited employees for design and engineering positions via the domain <jobs.lever.co/compound/>. Tellingly, the job advertisements listed therein (*e.g.,* for "Head of Product Design" and "Software Engineer" positions) repeatedly use the phrase "at Compound," giving prospective employees the misimpression that they are applying for a job at Compound's office in San Francisco, California. In fact, the foregoing advertisements are completely devoid of any reference to Alex Mack and, instead, rely solely on Compound's reputation and goodwill. Compound is aware that individuals viewing the Alex Mack job postings on Lever believed those postings were actually recruiting for positions with Compound.

35. This likelihood of confusion is exacerbated by the fact that a number of companies offering cryptoasset-related products have deployed both software for the deposit and withdrawal of cryptoassets on which users earn interest and branded debit cards that allow for withdrawal, pooling and spending. For example, Coinbase is a cryptoasset exchange headquartered in San Francisco, California. Coinbase users can deposit, withdraw, and trade a variety of cryptoassets on a global digital asset exchange. Notably, Coinbase also offers consumers the "Coinbase Card," a branded Visa debit card funded by the cryptoasset account balances of respective Coinbase users. In other words, because other companies offer software similar to the Protocol, the Compound UI, and credit or debit cards, consumers are likely to believe or assume that the Alex Mack Products are affiliated, connected, or associated with, or sponsored, authorized, approved or licensed by Compound, the Protocol, or the Compound UI.

### The Opposition Proceeding

36. Notwithstanding Compound's continuous use of the Compound Mark in commerce in relation to software, software applications and financial services and the potential likelihood of confusion, on April 24, 2019, Alex Mack filed an intent-to-use trademark application with the United States Patent and Trademark Office ("PTO"), covering software, software applications and financial services.

37. On August 13, 2019, the PTO published Alex Mack's application to register the "Compound" mark.

38. On August 16, 2019, Compound applied to the PTO for federal registration of the Compound Mark covering its software, software application, and financial services. In its application for the Compound Mark (the "Application"), Compound made claims in each relevant class of a date of first use of at least as early as April 8, 2018, and a date of first use in commerce of at least as early as September 27, 2018.[1]

---

[1] Compound's Application remains pending. The Examining Attorney for the Application at the USPTO has not raised any issues that the Compound Mark is generic, descriptive, or merely descriptive of any of Compound's services set forth in the Application.

39. On September 9, 2019, Compound filed a Notice of Opposition against Alex Mack's application before the TTAB on the basis that Compound had priority of use over Alex Mack in relation to the Compound Mark.

40. Thereafter, Compound served Alex Mack with requests for discovery, including requests for admission, interrogatories and requests for production of documents.

41. Rather than provide responses to Compound's discovery requests—many of which sought information relating to Alex Mack's knowledge of Compound's superior rights in the Compound Mark prior to launching the Alex Mack Products, Alex Mack chose to withdraw its application for "Compound." On January 28, 2020, Alex Mack filed an Express Withdrawal of Application under 37 C.F.R. § 2.68 before the TTAB.

42. Alex Mack filed this Express Withdrawal of Application without Compound's consent and as a result, the TTAB entered judgment against Alex Mack and sustained Compound's Opposition.

43. Although Alex Mack withdrew its application for federal registration of "Compound," Alex Mack intends to continue—and does continue to—use of the Compound Mark for its software and financial services and to operate the Infringing Domain with full knowledge that such continued use infringes on Compound's earlier-established rights in the Compound Mark.

## COUNT I

### Federal Unfair Competition and False Designation of Origin

### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

44. Compound hereby realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

45. By virtue of having used, and continuing to use, the Compound Mark in commerce, Compound is the owner of common law trademark rights in the Compound Mark.

46. The Compound Mark is of incalculable value, highly distinctive, and has become uniquely and commonly associated with the Compound products and services upon which the Compound Mark appears.

47. With minimal research, Alex Mack could have had, and on information and belief did have, actual and constructive knowledge of Compound's use of the Compound Mark prior to Alex Mack's filing of its trademark application and prior to Alex Mack's unauthorized and infringing use of "Compound" in a manner nearly identical to the Compound Mark.

48. The unauthorized acts of Alex Mack in using the Compound Mark in connection with its products and services were commenced and continue in spite of Alex Mack's actual knowledge of Compound's rights in the Compound Mark and in spite of Alex Mack's knowledge that such activity is in direct contravention of Compound's rights.

49. Through its unauthorized use of the Compound Mark in commerce, Alex Mack knowingly and willfully has infringed and continues to infringe Compound's rights in the Compound Mark, so as to further create a likelihood of confusion, or to cause mistake, or to deceive the public as to the nature, association, source and sponsorship of the Alex Mack Products.

50. The aforesaid acts of Alex Mack constitute the use of words, terms, and names, false designations of origin, and false and misleading representations of fact that in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of the Alex Mack Products or other commercial activities.

51. Alex Mack's unauthorized use of the Compound Mark has proximately caused injury to the value and goodwill of the Compound Mark, as well as to Compound's business.

52. Unless enjoined, Alex Mack's infringing conduct will continue to cause substantial and irreparable injury to the public and to Compound's business reputation and goodwill, for which Compound lacks an adequate remedy at law.

53. Alex Mack's willful and deliberate misconduct amounts to exceptional circumstances, justifying an award of reasonable attorneys' fees and costs to Compound pursuant to 15 U.S.C. § 1117.

54. Alex Mack's willful misconduct also entitles Compound to monetary damages, including but not limited to, Compound's actual damages and lost profits.

//

## COUNT II

### Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)

55. Compound hereby realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

56. Compound is the owner of the Compound Mark, as well as the Application.

57. Compound is the owner and registrant of the Compound Domain (compound.finance), which was distinctive at the time of registration and is currently widely known among the public.

58. Alex Mack registered, trafficked in, and used its Infringing Domain (compound.co), which is confusingly similar to the Compound Mark and the Compound Domain.

59. Alex Mack registered, used, and trafficked in the Infringing Domain with bad faith and the intent to profit from the brand equity and goodwill associated with the Compound Mark and the Compound Domain.

60. Through use of the Infringing Domain, Alex Mack intended to, and continues to, divert consumers from the Compound Domain to the Infringing Domain in order to promote its product in a way that will harm the goodwill the Compound Mark represents, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the products offered on the websites.

61. Unless an injunction is issued enjoining any continuing or future use of the Compound Mark in the Infringing Domain, such continuing or future use is likely to cause further confusion, mistake or to deceive as to source, origin, affiliation, or sponsorship, and thereby to damage Compound irreparably. Compound has no adequate remedy at law.

62. Pursuant to 15 U.S.C. § 1117(a), Compound is entitled to an order awarding all damages proximately caused by Alex Mack's conduct.

63. Alex Mack's conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Compound is entitled to an award of treble damages against Alex Mack.

64. Alex Mack's willful and deliberate acts make this an exceptional case under 15 U.S.C. § 1117(a), and Compound is thus entitled to an award of attorneys' fees and costs.

65. Alternatively, Compound is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. § 1117(d).

### COUNT III

### Common Law Unfair Competition

66. Compound hereby realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

67. Compound has invested substantial time, resources, skill, and money in developing the Compound Mark and the resultant goodwill associated therewith.

68. Alex Mack's aforesaid acts are a violation and in derogation of Compound's common law rights activities and intellectual property, and are likely to cause such confusion or mistake, and have been, and will continue to be, unfair under California law.

69. Compound did not authorize or consent to Alex Mack's aforesaid activities, which constitute misappropriation of Compound's intellectual property, goodwill, as well as an opportunity cost of foregone profits.

70. Alex Mack's aforesaid acts have proximately caused, and will continue to cause, loss, damage and injury to Compound and to consumers and the public.

71. Alex Mack knows, or reasonably should know, that its conduct has misled, and will continue to mislead, the public.

72. Alex Mack's aforesaid acts have been knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of, Compound's rights.

73. As a consequence of Alex Mack's actions, Compound has suffered and will continue to suffer irreparable harm. Compound is entitled to injunctive relief to halt Alex Mack's unlawful acts.

### COUNT IV

### Common Law Trademark Infringement

74. Compound hereby realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

75. Compound has valid and protectable common law rights in the Compound Mark and is the senior user of the Compound Mark for the overlapping services that Compound and Alex Mack provide.

76. Alex Mack's conduct, as described above, constitutes infringement of Compound's common law rights in the Compound Mark.

77. Alex Mack's use of the Compound Mark has caused, and will continue to cause, confusion as to the origin of Alex Mack's products and services because its unauthorized actions cause the public to believe that there is a relationship between Compound and Alex Mack.

78. Alex Mack's wrongful acts have permitted, and will permit, Alex Mack to receive substantial profits based upon the strength of the reputation of Compound and the substantial goodwill it has built up in the Compound Mark.

79. As a direct and proximate result of Alex Mack's wrongful conduct, Compound has been and will continue to be damaged.

80. Unless an injunction is issued enjoining any continuing or future use of the Compound Mark, such continuing or future use is likely to continue to cause confusion and thereby to damage Compound irreparably. Compound has no adequate remedy at law.

### COUNT V

### Unfair Competition – California Business & Professions Code (§§ 17200 *et seq.*)

81. Compound hereby realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

82. Alex Mack's above-described acts and practices are likely to mislead or deceive the general public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq.*

83. The above-described acts further constitute business acts that violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and, therefore, are unlawful.

84. The above-described acts further constitute business acts that violate the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and, therefore, are unlawful.

85. Alex Mack's unfair, unlawful, and fraudulent business practices described above present a continuing threat and are meant to deceive, and have deceived, members of the public.

86. As a direct and proximate result of Alex Mack's wrongful conduct, Compound has been injured in fact and has lost money and profits, and has suffered injury to its reputation and goodwill. Such harm will continue unless the Court enjoins Alex Mack's acts. Compound has no adequate remedy at law. Accordingly, Compound is entitled to an injunction prohibiting Alex Mack from continuing the practices described above.

## PRAYER FOR RELIEF

WHEREFORE, Compound respectfully requests that this Court enter judgment in its favor and against Alex Mack and grant the following relief:

A. An injunction barring Alex Mack and its directors, officers, agents, servants, employees, and all persons acting on Alex Mack's behalf from engaging in any use of the designation, "Compound," or any other name or mark confusingly similar to the Compound Mark, either alone or in combination with other words or symbols, as a part of any trademark, service mark, trade name, corporate name, assumed name, domain name, website, email address, or in any other manner in connection with optical products;

B. An injunction ordering Alex Mack to deliver up to Compound all literature, signs, prints, advertising materials, catalogues, stationery, websites, domains and any other item bearing the Compound Mark, either alone or in combination with other words or symbols, that is published, even if not disseminated publicly, for promoting Alex Mack's services, pursuant to 15 U.S.C. § 1118;

C. The damages Compound has sustained as a result of Alex Mack's infringement and unfair competition, in an amount to be ascertained at trial;

D. A trebling of any and all relevant damages awarded, pursuant to 15 U.S.C. §1117(a);

E. An award of Compound's attorneys' fees and costs; and

F.   Such other and further relief that the Court may deem just and proper under the circumstances.

Dated:  April 8, 2020

Respectfully submitted,

**FISHERBROYLES, LLP**

By:   /s/ Daniel D. Harshman
Daniel Harshman
2110 Artesia Blvd., #606
Redondo Beach, CA  90278
Telephone:  (310) 400-5668
Email:  daniel.harshman@fisherbroyles.com

Rebecca Rettig (*pro hac vice pending*)
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 522-9975
Email:  rebecca.rettig@fisherbroyles.com

**DEMAND FOR JURY TRIAL**

Compound hereby demands a trial by jury on all issues so triable in this action.

Dated: April 8, 2020                                    Respectfully submitted,

**FISHERBROYLES, LLP**

By:   /s/ Daniel D. Harshman
Daniel Harshman
2110 Artesia Blvd., #606
Redondo Beach, CA  90278
Telephone: (310) 400-5668
Email:  daniel.harshman@fisherbroyles.com

Rebecca Rettig (*pro hac vice pending*)
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 522-9975
Email:  rebecca.rettig@fisherbroyles.com